**Department of Workforce Development**
**Equal Rights Division**
819 N. 6th St. Rm. 723
Milwaukee, WI 53203
Telephone: (414) 227-4384
Fax: (414) 227-4084
TTY: (414) 227-4081



**STATE OF WISCONSIN**

**DWD**

Department of Workforce Development

Tony Evers, Governor
Caleb Frostman, Secretary

DATED AND MAILED   SEP - 9 2019

Received

SEP 1 0 2019

vonBriesen & Roper, s.c.

Anita Bentley
4103 N 12th St
Milwaukee, WI 53209
   Complainant

vs.

INITIAL DETERMINATION -
NO PROBABLE CAUSE

ERD Case No. CR201901359
EEOC Case No. 26G201900866C

Home Care Assistance
409 E Silver Spring Dr
Milwaukee, WI 53217
   Respondent

---

I. THE DIVISION DECIDED:

There is no probable cause to believe Home Care Assistance violated the Wisconsin Fair Employment Law, sec. 111.31--111.395, Stats., by:

A. discriminating against the Complainant in terms or conditions of employment because of color; or by

B. terminating the employment of the Complainant because of age.

The complaint is therefore dismissed.

II. THIS MEANS:

The Equal Rights Division found no reason to hold a formal hearing on the complaint and is dismissing the complaint.

III. THE NEXT STEP IS:

**The dismissal will become final unless the Complainant submits a written appeal letter to the Equal Rights Division, P.O. Box 8928, 201 East Washington Avenue, Room A100, Madison, Wisconsin 53708-8928. The appeal letter must be received within 30 days of the date this determination was mailed.** (The DATE OF MAILING is stamped at the top of the Initial Determination.) In the appeal letter, the Complainant must state the

EXHIBIT A

specific reasons for appealing.

If the Complainant files a timely appeal, this case will be certified for a formal administrative hearing. After the hearing, an Administrative Law Judge will decide if there is probable cause to believe that a violation occurred. A notice of hearing stating the date, time and place of hearing will be sent to the parties. This notice will also include an information sheet, as well as a copy of the statutes and administrative code. At the hearing, the parties will be given the opportunity to present evidence to support their cases. Neither the Initial Determination, nor the evidence presented to the Equal Rights Division during the investigation of this case, will automatically become part of the record at hearing. <u>The Administrative Law Judge will only consider evidence presented at the hearing.</u> The parties may wish to consult with an attorney for legal advice. The Division will close this case without further action if no timely appeal is received.

IV. <u>DATE OF FILING AND/OR INITIAL WRITTEN CONTACT</u>:

    A. The Complainant first contacted the Division in writing on May 20, 2019, alleging employment discrimination. The Division accepted the Complainant's complaint on May 20, 2019.

V. <u>THE DIVISION DECIDED THERE WAS NO PROBABLE CAUSE BASED ON THE FOLLOWING INFORMATION</u>:

    A. The Respondent is a company that provides senior care to its clients through various care managers, who provide both short-term and long-term support to aid its clients through both the physical and emotional challenges presented by the aging process.

    B. The Complainant began her career with the Respondent as a caregiver on August 8, 2016. The Complainant was responsible for ten clients. She was terminated from her employment on April 4, 2019.

    C. The Complainant claims she was harassed because of her color, which is black, and because of her age. The Complainant was born on April 18, 1959. The Complainant claims she was ultimately terminated because of her age.

    D. On January 2019, the Respondent states the Complainant left one of her clients alone for 90-120 minutes to take her car to be repaired, a clear violation of the Respondent's policy. The Complainant does not deny this incident occurred, but she mentions she was never informed of this violation. Around this time, the Complainant states one of her clients had used derogatory language related to her color. The Respondent did take affirmative steps to request the client and his family refrain from using derogatory comments or phrases around its caregivers.

    E. On February 20, 2019, when the Respondent suspected that policy was being violated concerning client's finances and banking and management of funds, all employees of the Respondent were again reminded of the policy via email. The Respondent provided a copy of this policy and it states, "That policy expressly forbids a caregiver, for obvious reasons, from (1) taking cash, money, checks, credit cards, debit cards or any personal property directly from a client; (2) from taking a client to a financial institution or logging in online into any financial account/information related to a client for any purpose without prior authorization

      from HCA management; and (3) if a client has petty cash or a gift card for the caregiver to use for shopping, the caregiver was required to call into HCA's system and report how much was spent and where and to keep all receipts as evidence of what was purchased and spent so that the receipts can be placed in a binder at HCA's offices".

F.     On March 21, 2019, the Complainant claims there was a brief conversation surrounding her birthday. According to the Complainant, the owner of Home Care Assistance and coworkers were surprised that she would be 60 years of age come April 18, 2019. She finds it suspicious that two weeks later, her employment with the Respondent was terminated. The Respondent states that when the Complainant was hired by the same HCA management, she was already in her 50's, thereby creating an inference that her age had no influence in the hiring or termination decision. In addition, the Respondent states no one in HCA management specifically recalls any mention of the Complainant's age on March 21, 2019.

G.     In late March/early April, the Respondent states the Complainant was found to have violated the mandatory corporate policy concerning client's finances and banking and management of funds. The Respondent indicates that policy was distributed to the Complainant upon hire and she signed off on her acknowledgement of the policy on August 4, 2016. The Respondent provided the signed copy. The Complainant acknowledges that she signed the policy when she was hired. However, the Complainant indicates that she was given the go-ahead from the Respondent, to obtain a personal debit card for one of her clients so that the client could pay off a bill.

H.     On April 4, 2019, the Respondent's management, Ms. Patty Cohen and Ms. Jessica Barnett, scheduled a meeting with the Complainant to discuss the three separate violations she had committed. Ms. Barnett first informed the Complainant that she learned she had assisted a client with signing up for and receiving a personal debit card. According to the Respondent, the Complainant admitted in doing so, but claimed that she didn't know about the policy because she believed the policy was new. Ms. Barnett reminded the Complainant of her signature on the policy upon hire, the mandatory training and email sent on February 20, 2019, to remind caregivers of the policy; and the fact that the policy was mandatory. Ms. Barnett informed the Complainant that she never should have involved herself in anything financial concerning the client, including setting up a debit card. The Respondent states the Complainant acknowledged her understanding of that violation. Thereafter, Ms. Barnett raised other policy violations with the Complainant that they had discovered prior to the meeting. Specifically, Ms. Barnett informed the Complainant that the Respondent had learned that a client had purchased personal items for the Complainant while she was grocery shopping with the client. While the Complainant acknowledged the occurrence, she stated that "she did not think it was a big deal". Following that discussion, the conversation turned to the Complainant's inappropriate communications with a client's family. Ms. Barnett reminded the Complainant that also during HCA mandatory meetings all caregivers were reminded of the policy that all communications with a client's family were required to go through HCA management and no photographs were to be taken of a client. According to the Respondent, the Complainant admitted that she chose to communicate directly to the client's family and admitted to sending photographs to the family and answering questions posed to her by the client's family about another HCA caregiver, both in violation of HCA policy. The Complainant states she had

       established a good relationship with this client, as asked to do by management, and nothing was done without the client's consent regarding contacting the client's family and taking photographs.

  I.     Based on these policy violations, the Respondent decided to terminate the Complainant's employment on April 4, 2019.

VI.    INVESTIGATOR'S EXPLANATION:

  A.    The Complainant has failed to present evidence suggesting discrimination based on age and color. Though a client used derogatory language towards the Complainant, the Respondent took the appropriate action to address the incident. The Complainant has not substantiated her position that she was terminated because of her age. The Respondent has presented information that explains the reasoning behind their decision to terminate the Complainant's employment. The Complainant violated company policy on multiple occasions. The Complainant may have established good relationships with the clients, but she was still required to abide by the Respondent's policies.

Giovanni Roman  
Equal Rights Officer

cc:    Complainant  
       Respondent  
       Maria DelPizzo Sanders, Respondent's Attorney  
       EEOC